**STATE**

v.

**Eugene C. TEXTER.**

**No. 90–365–C.A.**

Supreme Court of Rhode Island.

July 17, 1991.

Annie Goldberg, Asst. Atty. Gen. and James E. O'Neil, Atty. Gen., Providence, for plaintiff.

Catherine A. Gibran, Asst. Public Defender, Barbara Hurst, Chief Appellate Atty., and Richard M. Casparian, Public Defender, Providence, for defendant.

OPINION

KELLEHER, Justice.

This litigation is before us on an appeal by the defendant, Eugene C. Texter (Texter), from a conviction by a Superior Court jury on charges alleging sexual assault and breaking and entering.

The pertinent facts of this case are as follows. On June 17, 1988, a five-count indictment was filed in Washington County Superior Court against Texter. The indictment charged him with (1) three counts of first-degree sexual assault, in violation of G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1987, ch. 238, § 1; (2) one count of breaking and entering, in violation of G.L.1956 (1981 Reenactment) § 11–8–2, as amended by P.L.1985, ch. 426, § 1; and (3) one count of assault with a deadly weapon, in violation of G.L.1956 (1981 Reenactment) § 11–5–2, as amended by P.L.1981, ch. 76, § 1. The assault-with-a-deadly-weapon charge was dismissed on double-jeopardy grounds following the presentation of the state's case.

At trial the victim testified that on the morning of February 12, 1988, Texter, wearing a ski mask and carrying a knife, broke into her apartment. According to the victim, Texter then bound her hands and sexually assaulted her at knifepoint. Later, while still under direct examination, the prosecution specifically asked the victim if she had fabricated the story or if she held a grudge against Texter. She replied in the negative.

Subsequently on cross-examination the defense attempted to establish that the victim did hold a grudge against Texter and had fabricated the entire story. Specifically the defense sought to elicit testimony regarding an incident in which Texter had accused the victim's husband of stealing

charitable donations and threatened to report him. The prosecution objected, arguing that this was an attempt to impeach a witness who was not on the stand. The trial justice sustained the objection and described the evidence as irrelevant. Likewise, when the defense attempted to cross-examine the victim's husband regarding the same episode, again to show bias and fabrication, the state objected and the trial court ruled that such testimony was not relevant to a defense of fabrication.

Texter now argues that the trial justice erred by limiting his cross-examination and preventing him from establishing any indication of bias or lack of impartiality on the part of the victim and her husband.

Before discussing the merits of this issue, a review of the relevant law is in order. Both the Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution ensure a criminal defendant the right to confront those who testify against him at trial. *State v. Parker,* 566 A.2d 1294, 1294–95 (R.I.1989). Concomitantly the right of the criminal defendant to cross-examine his accusers is a fundamental tenet of both our Federal and our State Constitutions. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Veluzat,* 578 A.2d 93 (R.I.1990); *State v. Oliveira,* 576 A.2d 111 (R.I.1990); *State v. Parker,* 566 A.2d 1294 (R.I.1989); *State v. Powers,* 566 A.2d 1298 (R.I.1989); *State v. Canning,* 541 A.2d 457 (R.I.1988); *State v. Manocchio,* 523 A.2d 872 (R.I.1987); *State v. Burke,* 522 A.2d 725 (R.I.1987); *State v. Anthony,* 422 A.2d 921 (R.I.1980). Likewise it is well settled that the permissible scope of cross-examination includes questions eliciting testimony that tends to show bias or motive, and moreover, precluding such has been held to violate the confrontation clause of the Sixth Amendment. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *see also McCormick On Evidence,* § 40 (3d ed. Cleary 1984).

■ Indeed, our past opinions have frequently espoused that we are "especially solicitous of cross-examination for bias or motive on the part of a defendant's primary accuser." *State v. Beaumier,* 480 A.2d 1367, 1372 (R.I.1984); *see also State v. Veluzat,* 578 A.2d at 95; and *State v. Brennan,* 526 A.2d 483, 488 (R.I.1987). Furthermore, although the scope of cross-examination for the purpose of impeaching a witness's credibility is not unlimited, a trial justice may nevertheless reject only that evidence that is irrelevant and not probative of any bias or motive. *Veluzat,* 578 A.2d at 95; *see, e.g., State v. Canning,* 541 A.2d 457 (R.I.1988); *State v. Beaumier,* 480 A.2d 1367 (R.I.1984); *State v. Parillo,* 480 A.2d 1349 (R.I.1984); *State v. Freeman,* 473 A.2d 1149 (R.I.1984); and *State v. DeBarros,* 441 A.2d 549 (R.I.1982).

■ Thus in the case before us the initial question to be addressed is whether the evidence sought to be introduced by defendant was relevant and, more importantly, a permissible inquiry protected by the Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution. We believe that it was.

At trial defense counsel attempted to establish that both the victim and her husband had a grudge against Texter arising from an incident wherein Texter had accused the victim's husband of stealing. Unlike *Veluzat,* this is not a case where defense counsel sought to elicit testimony regarding any bias the witness might have toward someone other than the accused, that is, a girlfriend or an acquaintance, and thus too "tenuously related, if at all, to the issue of her possible bias against [the] defendant." *Veluzat,* 578 A.2d at 95. Again, here defense counsel sought to elicit testimony that was probative of the accusers' motive and bias against defendant himself. The defendant's contention, as explained to the trial justice, was that the victim and her husband may have been stealing funds from a charitable organization. According to counsel, when Texter discovered this alleged theft and threatened to report them, the victim and her husband fabricated the sexual-assault complaint in retaliation.

We are of the belief that inquiry into this area would have a tendency to make the existence of any bias or motive harbored by the victim and her husband more or less probable than it would be without such evidence. Our conclusion is bolstered by the fact that the jury heard testimony during trial that the victim and her husband did not have an ax to grind for Texter and that they did not fabricate the complaint. Accordingly, evidence to rebut these assertions was not only relevant but also essential if Texter was to be afforded his Sixth Amendment right to cross-examine those witnesses against him. Consequently it is our belief that the trial justice erred by rejecting defense counsel's efforts to inquire into the witness's alleged bias and motive for testifying.

■ Having concluded that the trial justice improperly restricted the scope of defendant's cross-examination, we now focus on the question of whether that error compels us to vacate defendant's conviction. In *State v. Canning*, we pointed out that whereas an impermissible restriction of cross-examination was a constitutional violation, it nevertheless "does not fall into the category of constitutional errors that are automatically deemed prejudicial." 541 A.2d at 461.

In accordance with the decision in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), we have applied the harmless-error analysis to such constitutional violations in order to determine whether the defendant was prejudiced. *Canning*, 541 A.2d at 461; *see also Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–87, and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Consequently, in making our determination, we look to "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and * * * the overall strength of the prosecution's case." *Van Arsdall*, 475

U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–87. Given the totality of these factors, if we cannot state beyond a reasonable doubt " 'that the defendant would have been convicted without the witness' testimony, or * * * that the restricted line of inquiry would not have weakened the impact of the witness' testimony,' " we must find the error harmful and vacate defendant's conviction. *State v. DeBarros*, 441 A.2d 549, 552 (R.I.1982)(quoting *Springer v. United States*, 388 A.2d 846, 856 (D.C. App.1978)). *See also State v. Manocchio*, 523 A.2d 872 (R.I.1987).

Upon reviewing the pertinent facts of this case, we are not convinced beyond a reasonable doubt that defendant would have been convicted without the testimony of the victim and her husband. Nor can we say that the jurors would not have viewed their testimony in another light had they received evidence of possible bias.

Indeed, given that the victim was the sole witness who identified the defendant as her assailant, her noncumulative testimony was certainly crucial to the prosecution's case in chief. Moreover, the other independent evidence presented by the prosecution, a seminude photograph of the victim that the defendant purportedly sent to her with a letter that indicated his desire to become intimate, his statement that he had gone to the victim's apartment on the morning in question, items of clothing seized from the defendant's apartment that were allegedly worn by the victim's attacker, and a typewriter that was also seized from the defendant's apartment that was purported to be the one used to type the letter sent to the victim, although probative, does not provide sufficient indicia of proof to persuade us beyond a reasonable doubt that the defendant would have been convicted without the victim's testimony. Likewise, given the severity of the accusation the defendant made against the victim's husband—stealing charitable funds— we cannot say a jury would disregard it as adequate motive for fabricating a sexual-assault complaint and accordingly view the victim's testimony differently.

Consequently the defendant's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for a new trial.