IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 9, 2005

## STATE OF TENNESSEE v. DOUGLAS E. COPELAND

**Appeal from the Criminal Court for Putnam County**
**No. 03-0699     Leon Burns, Judge**

_____

**No. M2004-01796-CCA-R3-CD - Filed May 11, 2005**

_____

The defendant, Douglas E. Copeland, was convicted by a Putnam County Criminal Court jury of driving under the influence of an intoxicant (DUI), a Class A misdemeanor, and driving on a suspended license, a Class B misdemeanor. The trial court imposed a sentence of eleven months, twenty-nine days for the DUI conviction, with probation after ten days in jail, to be served concurrently with his sentence of six months on probation for the driving with a suspended license conviction. The trial court also ordered that the defendant pay fines totaling $860.00. On appeal, the defendant contends that the evidence was insufficient to support his DUI conviction and that the trial court erred by failing to instruct the jury that his inoperable vehicle was a defense to the DUI offense. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

David Neal Brady, District Public Defender, and H. Marshall Judd, Assistant Public Defender, for the appellant, Douglas E. Copeland.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; William Edward Gibson, District Attorney General; and David Alan Patterson and Marty S. Savage, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's arrest for driving under the influence of an intoxicant after he hit a couple of trees with his vehicle. Monterey Police Lieutenant Richard Lynch testified that he was dispatched to the scene of the defendant's accident on August 3, 2003, at approximately 8:45 p.m. He said that when he arrived, the defendant was sitting in the driver's seat with the engine running and attempting to move his car away from the tree. He said that he asked the defendant for his driver's license and that the defendant did not have one. He said a computer check revealed that

his driver's license had been suspended in Virginia, Tennessee, and Georgia. He said he asked the defendant to leave his car and perform some field sobriety tests because the defendant appeared highly intoxicated. He said the defendant smelled strongly of alcohol, was unsteady on his feet, appeared confused, and had red, watery eyes. He said the defendant admitted drinking three beers at home. He said the defendant failed four tests: he was unable to recite the alphabet, count backward from thirty-six to twenty-four, perform a test involving counting with his fingers, or stand upright with his eyes closed and head back for an estimated thirty seconds. He said that when he asked the defendant where the accident occurred, the defendant replied, "Right here. I don't know what the hell I hit." The defendant denied being the driver and said, "If I admit I'm driving, then you'd get me for a DUI." This part of the conversation between Lieutenant Lynch and the defendant was tape recorded and played for the jury.

On cross-examination, Lieutenant Lynch testified that no one other than the defendant was present when he arrived at the scene of the accident and that he discovered no physical evidence of another person in the car. He said the car was registered to the defendant. He said the car left the roadway, hit a tree with a glancing blow on the right side and stopped when it hit a second tree. He said that the car appeared to be severely damaged but that he could not tell if it was inoperable or able to be moved. He said the defendant was attempting to move when he arrived. He said the defendant told him that a "whore" was driving the car when they hit the trees but that she ran off afterward. He said the defendant initially refused to give him the woman's name but later told him it was "Maria." He said the defendant did not know where she was or where she lived or any other information about her. He said that the defendant agreed to take a breathalyzer test but that the defendant's lack of cooperation defeated the completion of the test.

The defendant testified that before the accident, he was at a bar with a woman he had just met named "Mary." He said that they left the bar and that she drove his car because she said he was too drunk. He said he had consumed "[p]robably a six-pack." He admitted he caused the accident by "playing with something [he] shouldn't have." He said that after she hit the tree, he could not open the passenger door. He said she left the car and then he got out to inspect the vehicle. He said that he had worked as a machinist for thirty-five years and that he knew the car was inoperable. He said he walked to the nearest house and asked the residents to call the police. He said that when he returned to the car, the woman was gone. He said he sat in the driver's seat of the car while waiting for the police to arrive. He said the car's frame was bent and one tire was "busted" and rammed into the back of the fire wall. He said that the car was later towed from the police impound yard to his home and that he determined later it was not worth fixing.

On cross-examination, the defendant testified he did not try to find the woman who drove his car because she would never have admitted to being involved. He admitted that he was drunk at the time of the accident and that he may have said to Lieutenant Lynch, "I don't know what the hell I hit." He acknowledged that the car contained no evidence to show that a woman was present and explained that she took her purse and personal belongings with her. He said that they had just met and had been in the car only five minutes before the accident occurred.

Recalled as a rebuttal witness, Lieutenant Lynch testified he found nothing to indicate that the defendant left the scene to call the police. He said that he asked the defendant to describe the woman he claimed was driving the car but that the defendant was unable to do so.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the facts are insufficient as a matter of law to sustain his DUI conviction. His brief, though, is devoid of argument or reasons to support his contention. In any event, our review reflects that the evidence justifies finding the defendant guilty beyond a reasonable doubt.

## II. JURY INSTRUCTION

The defendant contends that the trial court erred by failing to instruct the jury that an inoperable vehicle would be a defense to the charge that he was in physical control of an automobile while intoxicated. The state contends that the trial court properly instructed the jury.

Tennessee Code Annotated section 55-10-410 states in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system

The trial court gave the jury the following instruction concerning "physical control" of an automobile:

> For a person to be in physical control of a motor vehicle, a person must be present at or near the motor vehicle, and must have the ability to determine whether or not such motor vehicle is moved, and if so, to where it is moved. It is not necessary that the motor of a motor vehicle be running or capable of starting for a person to be in physical control of such vehicle. A person may be in physical control of a motor vehicle without driving, starting, or moving the motor vehicle.

The defendant has a constitutional right to complete and accurate instructions of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). He also has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury under proper instructions.

See State v. Brown, 836 S.W.2d 530, 553 (Tenn. 1992); State v. Phipps, 883 S.W.2d 138, 149-50 (Tenn. Crim. App. 1994). The trial court has a duty to give a complete charge of the law of the offense included in the indictment, without any request on the part of the defendant to do so. T.C.A. § 40-18-110(a); Teel, 793 S.W.2d at 249. The failure to do so deprives the defendant of the right to a jury trial. Id. The Fifth and Sixth Amendments to the United States Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 510, 115 S. Ct. 2310, 2313 (1995); Sullivan v. Louisiana, 508 U.S. 275, 277-78, 113 S. Ct. 2078, 2080-81 (1993).

"The proper function of a special instruction is to supply an omission or correct a mistake made in the general charge, to present a material question not treated in the general charge, or to limit, extend, eliminate, or more accurately define a proposition already submitted to the jury." State v. Cozart, 54 S.W.3d 242, 245 (Tenn. 2001). "A trial court should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." State v. Phipps, 883 S.W.2d 138, 150 n.20 (Tenn. Crim. App. 1994). Denial of a special request is error only if the trial court's charge does not fully and fairly state the applicable law. Cozart, 54 S.W.3d at 245; State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). However, Rule 30, Tenn. R. Crim. P., provides that special requests for jury instructions be filed in writing. A trial court will not be placed in error when a requested special instruction was not presented in writing. State v. Mackay, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982).

The record reflects that at the conclusion of proof at the trial, the defendant's attorney requested a special jury instruction on the inoperability of the defendant's car as it related to the issue of whether he had "physical control" of the car at the time he was arrested. The trial court denied his request. At the hearing on the defendant's motion for new trial, the defendant's attorney argued that the trial court erred by refusing to give a jury instruction that a "completely" inoperable automobile would be a defense to the charge that the defendant had physical control of the car. Although we believe that a properly worded jury instruction regarding a completely inoperable vehicle may have been proper in this case, no clear instruction was presented by the defendant. A written request was never submitted to the trial court at the conclusion of trial, nor has the defendant set forth a proposed jury instruction in his brief to this court. It is also unclear from our review of the record of the trial and the hearing on the motion for new trial what the proposed instruction would have been. Because a trial court will not be placed in error when a requested special instruction was not presented in writing, and no inaccuracy exists in the charge given by the trial court, the defendant is not entitled to relief on this issue.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-4-